

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 24 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

Lauren Angelica Law
Sui Juris, Pro Se
Secured Party Creditor for
Ens legis LAUREN ANGELICA LAW
P.O. Box 274
Ellenwood, Ga 30294

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Lauren A. Law | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:17-CV-1953-RWS |
| Darius Pattillo, Ernest D. Blount, | ) | |
| B. Parker, C. Huffman, T. Webster, | ) | |
| D. Rose, Caitlin Mcgillicuddy, | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## MOTION TO AMEND VERIFIED COMPLAINT

COMES NOW, Plaintiff, Lauren A. Law, bringing this Complaint seeking recovery of

civil damages for personal injury, monetary cost, financial hardship, emotional trauma, as well as

punitive and exemplary damages for the violation of 1st Amendment, 4th Amendment, 5th

Amendment, 6th Amendment, 7th Amendment, 8th Amendment, 9th Amendment, 10th

Amendment, and 13th Amendment Protections and other criminal misconduct committed by the

HENRY COUNTY Agents, Officers, Judge, Assistant Solicitor, and District Attorney, named

1

herein, pursuant to 42 U.S.C. 1983, 42 U.S.C. 1985, as well as relief under Georgia Law. This action arises from the unlawful search and seizure, detention, wrongful arrest, excessive use of force, cruel and unusual punishment, willful property damage, and personal injury caused me by the Defendants named herein.

## JURISDICTION

### 1.

This action arises under the authority vested in this court by virtue of 42 U.S.C. §§1983, 1985, 1988; 28 U.S.C. § 1331, and 28 U.S.C. 1343, the 1st, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 13th Amendment of The Constitution for the United States of America. This Court is authorized to grant declaratory relief, pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## VENUE

### 2.

Proper venue is established in this court, pursuant to U.S.C.A. §1391. Defendants Pattillo, Blount, Parker, Huffman, Webster, Rose, and Mcgillicuddy reside within this Judicial District, and all occurrences or omissions giving rise to the claims occurred within this Judicial District.

## PARTIES

### 3.

Plaintiff Lauren A. Law (hereinafter "Law") is domiciled on Georgia, and is over the age of majority (18).

### 4.

2

Defendant "B. Parker" (hereinafter "Parker") was an "officer" of the HENRY COUNTY Police Department at the time of incident on December 9, 2016, and acting under color of state law, at all times relevant to the claims in this Complaint. He is sued in his individual capacity.

5.

Defendant "Parker" resides and is employed in Georgia. Defendant Parker may be served with a Summons and Complaint at his place of employment, HENRY COUNTY Police Department, 108 S. Zack Hinton Pkwy, McDonough, GA, 30253, or elsewhere where he might be found, including but not limited to, his home (or domicile).

6.

Defendant "C. Huffman" (hereinafter "Huffman") was an "officer" of the HENRY COUNTY Police Department at the time of incident on December 9, 2016, and acting under color of state law, at all times relevant to the claims in this Complaint. He is sued in his individual capacity.

7.

Defendant "Huffman" resides and is employed in Georgia. Defendant Huffman may be served with a Summons and Complaint at his place of employment, HENRY COUNTY Police Department, 108 S. Zack Hinton Pkwy, McDonough, GA, 30253, or elsewhere where he might be found, including but not limited to, his home (or domicile).

8.

Defendant "T. Webster" (hereinafter "Webster") was an "officer" of the HENRY COUNTY Police Department at the time of incident on December 9, 2016, and acting under

color of state law, at all times relevant to the claims in this Complaint. She is sued in her individual capacity.

9.

Defendant "Webster" resides and is employed in Georgia. Defendant Webster may be served with a Summons and Complaint at her place of employment, HENRY COUNTY Police Department, 108 S. Zack Hinton Pkwy, McDonough, GA, 30253, or elsewhere where she might be found, including but not limited to, her home (or domicile).

10.

Defendant "D. Rose" (hereinafter "Rose") was an "officer" of the HENRY COUNTY Police Department at the time of incident on December 9, 2016, and acting under color of state law, at all times relevant to the claims in this Complaint. He is sued in her individual capacity.

11.

Defendant "Rose" resides and is employed in Georgia. Defendant Rose may be served with a Summons and Complaint at his place of employment, HENRY COUNTY Police Department, 108 S. Zack Hinton Pkwy, McDonough, GA, 30253, or elsewhere where he might be found, including but not limited to, his home (or domicile).

12.

Defendant Darius Pattillo (hereinafter "Pattillo") was the HENRY COUNTY District Attorney throughout the time of the criminal case against LAUREN A. LAW, case #: 17SR921EDB, and acting under color of state law, at all times relevant to the claims in this complaint. He is sued in his individual capacity.

4

13.

Defendant "Pattillo" resides and is employed in Georgia. Defendant Pattillo may be served with a Summons and Complaint at his place of employment, HENRY COUNTY Courthouse

2nd Floor, West Tower, McDonough, GA 30253 , or elsewhere where he might be found, including but not limited to, his home (or domicile).

14.

Defendant Ernest Blount (hereinafter "Blount") was the HENRY COUNTY STATE COURT "Judge" throughout the time of the criminal case against LAUREN A. LAW, case #: 17SR921EDB, and acting under color of state law, at all times relevant to the claims in this complaint. He is sued in his individual capacity.

15.

Defendant "Blount" resides and is employed in Georgia. Defendant Blount may be served with a Summons and Complaint at his place of employment, STATE COURT OF HENRY COUNTY, One Judicial Center, Suite 330, McDonough, GA, 30253, or elsewhere where he might be found, including but not limited to, his home (or domicile).

16.

Defendant Caitlin Mcgillicuddy (hereinafter "Mcgillicuddy") was the HENRY COUNTY STATE COURT "Assistant Solicitor" throughout the time of the criminal case against LAUREN A. LAW, case #: 17SR921EDB, and acting under color of state law, at all times relevant to the claims in this complaint. She is sued in her individual capacity.

17.

Defendant "Mcgillicuddy" resides and is employed in Georgia. Defendant Mcgillicuddy may be served with a Summons and Complaint at her place of employment, STATE COURT OF HENRY COUNTY, One Judicial Center, Suite 350, McDonough, GA, 30253, or elsewhere where she might be found, including but not limited to, her home (or domicile).

18.

STATEMENT OF CLAIM (Counterclaim in US District Court # 1:17-CV-1953-RWS):

1) I hereby give notice of claim of my secured right and violations against my privacy and security, and holding of my property, my body without a proven right or jurisdiction for seizure, and without honest service of fiduciary obligations in the laws of fair debt collection. Relief Sought:

2) I am seeking an order for relief from judgement and dismissal of the charges being held against my estate and threatening my life and safety, without proof of claim. I am requesting that the Court acknowledge and grant an injunction order for full settlement and closure of any case or charges, against my legal person LAUREN ANGELICA LAW, on the part of B. Parker, C. Huffman, T. Webster, D. Rose, Ernest Blount, Caitlin Mcgillicuddy, and Darius Pattillo, acting as Agents for the People of the State of Georgia, and the Clerk of Court. If necessary. I am seeking a Specific performance Order for such reformation of written instruments as are needed to reflect a full settlement and discharge of the case.

6

AFFIDAVIT OF FACTS:

3) I, Lauren A. Law, am the owner by right, as the secured creditor and controller of my own legal person, LAUREN ANGELICA LAW, all rights reserved.

4) I am also the owner, by right of occupation and right of first possession, of my own living body, having inherent unalienable rights to claim such as my own personal private property. 5th Amendment:

No one shall be deprived of property without due process of law.

5) I hereby state this claim of secured right, that I may recover what belongs to me, to demand release of the threats against my body, which the defendant is holding without a proven claim of debts owed. My freedom cannot be taken from me and held for collateral for the fraudulent claims of imaginary victims.

6) I am a living woman, with a cause in this matter due to my unlawful imprisonment, as I and my family, still to this day, are the only injured parties in this matter. My property right has been taken from me without due process and my life is at this very time in jeopardy, being threatened with further injury by the Defendants in this counterclaim. Therefore I hereby claim for damages that I, myself have sustained and my legal person, LAUREN ANGELICA LAW, has been wrongfully charged for unverified debts. A Statement of Claim has been filed on this matter in the United States District

7

Court of the Northern District of Georgia. Case #: 1:17-CV-1953-RWS

7) Without any proof of jurisdiction on the part of the adverse party, I have had my own physical body taken hostage, jailed 4 times already (double jeopardy), on a presumption, as the Defendants in this case have tried to collect unverified debts being levied against my legal person, LAUREN ANGELICA LAW, without any proof of claim against my legal person. I have already suffered great injury and loss myself, having been willfully trespassed on, by use of excessive force, wrongful arrest, and assault by the included Officers, Blount, and all co-conspirators involved, including but not limited to Pattillo, Mcgillicuddy, and their co-conspirators. Defendants listed herein have handled this matter in an unreasonable manner. I was held as collateral, unlawfully detained, and required to pay for debts that I have not been adequately informed of, so that I might verify them as it is my right and duty to inquire. I am being charged for alleged debts owed, without due process and verification of rights and obligations, according to law of trust and fiduciary duties. I cannot lawfully be held for unverified charges.

8) Furthermore, while being abducted and unlawfully detained, my body has been subjected to cruel and unusual punishments, and denied the release of my property without due process.


Points of Law and Authorities:

United States Constitution; 1st, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 13th Amendments

Excessive Fines, Cruel and Unusual Punishments, Unlawful Search and Seizure, Involuntary Servitude

Freedom of Speech violation, Due Process violations, Equal Protection violations.

Habeas Corpus

Deprivation of Rights Under Color of Law

Right of Debt Verification

Abduction and Extortion

Coercion

## FACTUAL ALLEGATIONS

19.

On December 9, 2016, Plaintiff Lauren A. Law was traveling in a silver Ford Taurus, on her way to a friend's house.

20.

At approx. 3:45 p.m., Law was stopped by Defendant B. Parker on Highway 42 at the intersection of Pinehurst Drive, in Stockbridge, Ga., allegedly for "no brake lights."

21.

Upon approaching the car, Parker stated he had stopped Law because he witnessed no brake lights on the Ford Taurus.

22.

The entire traffic stop by Defendant Parker was pretextual and unlawful, as no evidence ever came forward during the case's existence of the alleged "no brake lights."

23.

9

Law inquired about what crime she had committed, as she has a right and duty to do so.

24.

Defendant Parker stated to Law that having no brake lights was a crime, and demanded she give him her "license."

25.

Plaintiff was still concerned, believing she had not knowingly or willfully committed any crime, and continued to inquire about the alleged "no brake lights." She felt in fear for her safety as this man was alleging something he could not prove. Law felt there may have been ulterior motives for the pullover at this point.

26.

Parker began to get agitated with Law and ultimately ended up calling for "back-up" (Huffman, Webster, and Rose), without any reasonable articulated suspicion or probable cause to believe that the Plaintiff was committing or was about to commit any crime.

27.

When Huffman, Rose, and Webster arrived, Law continued attempting to understand the true nature of the stop, asking what crime she was being suspected of committing.

28.

Huffman began yelling threats to Law of breaking the window out of the car to gain possession of her license.

29.

Webster continuously tried pulling the passenger side window down manually with her bare hands, in an attempt to gain access to the inside of the car and Law.

30.

Law continued to state that she had committed no crime.

31.

Defendants Parker, Huffman, Webster, and Rose continued harassing Law for her license, using threats of force and violence, by way of coercion, to acquire Law's license.

32.

Defendant Parker began striking the back left window with his baton, in a raging fit.

33.

Unsuccessful, Parker moved to the front left window and began striking the window, positioned immediately in front of Law's face.

34.

Parker, still being unsuccessful at breaking the windows, slammed his baton down on the ground, in an uncontrollably violent manner.

35.

Defendant Huffman came to Parker's assistance, striking the front left window, and successfully shattering the window in Law's face.

36.

Plaintiff screamed, crying she had glass in her eyes. Glass also went in Law's mouth and throat.

37.

Defendant Rose reached inside the Ford Taurus, unlocked the doors, opened the front left door, and very violently grabbed Law and dragged her out.

38.

Defendant Webster unlawfully and illegally searched Law and each Officer participated in the seizure of property in Law's possession. The Ford Taurus was Plaintiff's grandmother's property.

39.

Plaintiff requested for immediate medical attention, as she could hardly open her eyes from the glass cutting the inside of them.

40.

Plaintiff was taken to the back of Parker's patrol car, in handcuffs, as she awaited for an ambulance to arrive.

41.

Plaintiff requested for her property back (cell phone), as she could barely make out the officers attempting to possibly delete the video she had recorded of the whole incident. Law claims it looked like they were passing the phone around.

42.

Defendant Webster then came over to the back seat of Defendant Parker's car, where Law's legs were hanging out of the side of the vehicle, as she was placed in that position by the officers, and attempted to slam the door on Law's legs.

43.

12

Plaintiff instinctively protected herself from further injury by extending her right leg to stop the door from slamming both legs in the door.

44.

Defendant Webster then repeatedly began kicking Law's right foot and leg approximately ten times, in a fit of anger.

45.

Defendant Huffman immediately responded, saying "Whoa! Whoa! Whoa!," putting his hands up at Webster as if to tell her to stop. Defendant Webster looked up at him like a deer in headlights, with wide eyes.

46.

Defendant Huffman continued with, "I'll handle this," as he then slammed the door on Plaintiff's legs.

47.

Plaintiff was eventually transported to Piedmont Henry Hospital for her injuries.

48.

After Plaintiff was released from Piedmont Henry Hospital, Defendant Webster drove Law to the HENRY COUNTY Jail, where she was held against her will until money could be paid for her release. Approx. from 7:00 p.m. to 3:00 a.m.

49.

Approximately four months later, Plaintiff had a first appearance court date, on April 6, 2017, with Defendant Ernest D. Blount.

50.

This time length for a first appearance was not speedy in any manner.

51.

Plaintiff submitted several requests for discovery to the court's clerk, as well as the solicitor's office, and District Attorney, in writing, as well as verbally to Defendant Mcgillicuddy. Plaintiff never received any of the requested elements of discovery.

52.

Defendant Mcgillicuddy, along with Defendant Parker and HENRY COUNTY Administration, stated they had video of the pullover on December 9, 2016. These statements were even made to two News stations as well as a local newspaper, The Henry Harold.

53.

Plaintiff was told by Mcgillicuddy to come into the Solicitor's Office for viewing the said videos, the morning of her first appearance before Defendant Blount.

54.

When Law got to the Solicitor's office the morning of her first court date, she and her witnesses were told to have a seat and wait, and that someone would help them shortly.

55.

A lady, with dark black hair, one of the solicitors, came out and said that there were "no videos."

56.

Plaintiff asked "What do you mean, no video?", and was again told there was no video. The lady stated that Parker had not had video in his patrol car for some days before Law's pullover.

14

57.

Plaintiff asked, "Isn't the burden of proof on the state?" to what the lady replied "We will discuss that in court." It was never discussed in court, however. (Violation of 18 U.S.C. 73 § 1506 and 18 U.S.C. 73 § 1512)

58.

While Law was in court, she was repeatedly interrupted by Defendant Blount, who violated her 1st amendment right to freedom of speech.

59.

Defendant Blount told Plaintiff to approach the podium in a very hostile and threatening manner. Plaintiff, respectfully declined his invitation.

60.

Defendant Blount told Plaintiff, in a very stern and aggressive tone, "Yeah, you coming up to the podium," as he motioned for him armed bailiffs to move in on Law.

61.

Plaintiff put her hands in the air and said "Under threat by coercion, I will." (Violation of 18 U.S.C. 73 § 1512)

62.

Defendant Blount replied, "You call it coercion, I call it court."

63.

Plaintiff approached the podium and responded to Defendant Blount, when he asked for a plea, with "I'm innocent."

15

64.

Defendant Blount replied that "innocent" and "not guilty" were the same thing "in this court."

65.

Plaintiff stated "I do not consent to contract and I waive the benefits. I'm here by special appearance and am here by threat, duress, coercion, and intimidation. I will not sign any document that is not a full vacation with prejudice of this case."

66.

Defendant Blount replied,"Is there anything else that you would like to say?"

67.

Plaintiff stated "If anyone attempts to enter a plea for me, other than "innocent," that would be practicing Law from the bench."

68.

Defendant Blount proceeded to enter a plea for Law, declaring "The court hereby enters a plea of not guilty in your behalf…"

69.

Plaintiff objected, stating "Objection, I do not consent." and was interrupted by Blount saying "Nah, nah, you are finished. You are finished."

70.

Defendant Blount motioned to the court's bailiff's and said "Put her in jail," then told Law "I'm holding you in contempt of court for disrupting my court."

71.

Plaintiff asked, "Is that criminal or civil?"

72.

Defendant Blount replied "It's contempt, you figure it out," despite what the judge's benchbook rules say about the essential component of stating whether the contempt is criminal or civil (7.01 and 7.02 of the Benchbook for the U.S. District Court Judges).

73.

Plaintiff continued trying to inquire and understand what crime she had committed, asking again "Is it criminal or civil? Where's the victim?"

74.

Defendant Blount yelled, "GO!" as he pointed his finger towards the door leading to the jail cells.

75.

Plaintiff was kept in a confined area/holding cell for approx. two hours.

76.

Two court bailiffs released Law from the holding cell and instructed her to go back out into the courtroom to face Defendant Blount again.

77.

Defendant Blount apologized to Law, saying he could not have her dragging things out like that in front of everyone, and asked her if she had anything to say.

78.

Law requested Defendant Blount's Oath of Office, Delegation of Authority, and proof of jurisdiction.

79.

Blount responded, saying that he had jurisdiction and did not have to prove it. He told Law that if she wanted to see his Oath, she was free to go over to Probate Court and see it, and failed to mention anything about his delegation of authority.

80.

Plaintiff responded, saying that according to case law, once Jurisdiction has been challenged, it must be proven."

81.

Defendant Blount instructed the court's armed bailiffs to take Law back to jail, which they complied with. Plaintiff was taken back to the holding cell a second time, and without any mention of what crime she had committed that time either

82.

After a short while, the bailiffs released Law from the holding cell once more, approaching her with court papers, in an attempt to persuade her into contract for another arraignment.

83.

Plaintiff stated, respectfully, that she did not consent to contract and was not signing anything. The Bailiffs were fine with that and did not push the issue. Bailiffs put Law back into the holding cell, but then immediately retrieved her, due to Defendant Blount wanting to see her for a third time.

84.

Plaintiff stepped back into the courtroom and approached the podium with her hands in handcuffs and behind her back. Defendant Blount told her that no response from her was necessary, but what she was going to do was sign the new court papers, acknowledging a new court date for another arraignment.

85.

Defendant Blount instructed one of the bailiffs to place a pen into Plaintiff's hand and have her sign the papers.

86.

Plaintiff stated that she did not consent, to which Defendant Blount loudly and angrily shouted "SHUT UP!", as he pointed his finger at Law.

87.

Defendant Blount threatened Plaintiff with a bench warrant and jail if she did not show up for the new court date scheduled for May 8, 2017.

88.

Before releasing Plaintiff from the courtroom, Defendant Mcgillicuddy stood up and made an announcement for the court, acknowledging all of Plaintiff's demands for discovery, to which she told Defendant Blount she had "no statutorily sufficient reason" for producing any of the requested elements Plaintiff needed, including but not limited to; Officers' full lawful names, badge numbers, and dash and body cam videos of the pullover. Defendant Blount replied, "Okay."

89.

Plaintiff did not sign anything and was dismissed by Defendant Blount, to go home, with no new charges.

90.

Due to Plaintiff having to graduate from College on May 9, 2017, she requested for an extension on the May 8, 2017 court date, in writing. Plaintiff did not feel comfortable or safe going before Defendant Blount the day before her scheduled graduation, due to his volatile, dishonorable behavior in the previous courtroom proceedings. She did not want to chance being wrongfully jailed again and missing her graduation.

91.

Defendant Blount ordered Defendant Mcgillicuddy and staff attorney [name unknown] to meet Plaintiff in the clerk's office to tell her he would not postpone the court date.

92.

Plaintiff, ultimately, did not attend the May 8, 2017 court date, and Defendant Blount issued a bench warrant for her arrest.

93.

Meanwhile, while Plaintiff was trying to find legal counsel, to remedy the situation the best way possible, HENRY COUNTY Sheriff Officers and Police Officers harassed, stalked, and damaged Plaintiff and family's personal property, even going as far as accessing Plaintiff's mail without proper warrants, which is a federal crime. Plaintiff's mother's patio furniture was thrown all over the place on her front porch. And Plaintiff's mother was followed by HENRY COUNTY Police late at night several times. (Violation of 18 U.S.C. 73 § 1513)

94.

Plaintiff made arrangements with a bounty hunter named "Charles" and wife [last name unknown], who agreed to "take Law directly to Defendant Blount to get the failure to appear charge dropped, and then "take her back home afterwards." Bounty Hunter even claimed to Plaintiff, as well as legal counsel, family members and friends, that he would sign a contract/agreement, in writing, stating that this was the truth.

95.

Plaintiff agreed to have "Charles" the bounty hunter and his wife come to her grandmother's home in Rex, Ga., to get this matter resolved, where upon arrival, Charles signed the prepared contract that Law had drafted up. All of this incident was recorded on video.

96.

Plaintiff was lied to and kidnapped, where she was taken to the HENRY COUNTY Jail, despite the "agreement" that had already been signed by Charles, the bounty hunter, promising a meeting with Defendant Blount to settle the matter.

97.

Law was held in HENRY COUNTY Jail for seven days. (From May 25, 2017 to May 31, 2017)

98.

While Plaintiff was in jail, two different public defenders from Lister and Holt Attorney's Office came to visit her. Aaron Smith, Law's assigned attorney, stated that if Law did not take the charges, she would be sitting in jail until August awaiting a trial date. This greatly upset Law, and made her feel forced into a guilty plea, even though "the state" had no evidence and Law had

video evidence along with three witnesses proving the brake lights worked upon arrival at the

impound yard to retrieve the Ford Taurus, immediately after the pullover for "no brake lights."

99.

Plaintiff met with Aaron Smith the next day in court, where he further encouraged and

coerced her into a guilty plea, despite her wants, now telling Law it wouldn't be until late

September until she would be able to have a trial date, and that she would be sitting in jail

waiting until then if she plead not guilty.

100.

Plaintiff was distraught and felt no other choice than to plead guilty to the facts, and

accept all of Defendant Mcgillicuddy's ("The State's) recommendations, which consisted of 12

months of probation, $1125 worth of fines, $350 for "attorney's fees", community service, anger

management classes, and moral reconation therapy for twelve weeks.

101.

Plaintiff, afterwards, filed a habeas corpus for relief from the court, attempting to rescind

her signature, since it was done under duress.

102.

It was told to Plaintiff, by her mother, who was a witness for Law in the courtroom

proceedings on May 31, 2017, that before Law came out to stand before Defendant Blount,

Blount made some slanderous, prejudice, bias remarks about her.

103.

Law's mother, Christine Law, as well as Law's public defendant, witnessed the

unprofessional behavior of Defendant Blount in action, as Blount slapped his hand on his head

when he got to Plaintiff's name on the docket, and said "Oh God!, laughing about it. Blount then continued with, "Ah, this is my friend, a special person, a special citizen, who deserves to be treated special." He finished with, "I hope I can get through this without blowing a gasket. She shot herself in the foot." This is a violation of 42 U.S.C. 1985, as Defendant Blount clearly singled Plaintiff out and classified her as a "special" class of persons.

104.

Plaintiff, unaware of any of these remarks being said about her in open court, approached the podium with public defender Aaron Smith. She felt no choice but to plead guilty and accept the state's recommendations, or spend another four months in jail awaiting a trial date. Under duress, and feeling forced, she plead guilty.

105.

Plaintiff asked the court to have sympathy on her, as she is a full time pre-med student, with no employment and no income.

106.

Defendant Blount stated that he would follow and enforce "the state's" recommendations.

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure under the United States' Constitution/ Due Process**

107.

Plaintiff incorporates the claims set forth in paragraphs 1-47.

23

108.

Defendants Parker, Huffman, Webster, and Rose unlawfully detained and arrested Law, as they had no reasonable articulated suspicion or probable cause justifying initiating the traffic stop.

109.

There was no evidence, whatsoever, that Law had committed any crime.

110.

Law had the right, under the Fourth Amendment of the United States Constitution, to be free from unreasonable search and seizures of her person and her property.

111.

Defendants Parker, Huffman, Webster, and Rose's searches of Law's person (body) and property without probable cause, a warrant, or consent were unreasonable under the Fourth Amendment of the Constitution for the United States of America.

112.

In all the foregoing, Defendants Parker, Huffman, Webster, and Rose acted with complete disregard to Plaintiff's constitutionally protected rights, 4th, 5th, 8th, 9th, 10th, and 13th Amendments. Due Process was denied. Cruel and unusual punishment was inflicted. Unreasonable search and seizure was committed. Unalienable rights were denied. Punishments for a crime that had not been established, ever, were inflicted upon Plaintiff.


## SECOND CLAIM FOR RELIEF

### Violation of Due Process/Fair and Speedy Trial

113.

Plaintiff incorporates the claims set forth in paragraphs 1-112.

114.

Defendants Pattillo, Blount, Mcgillicuddy, Parker, Huffman, Webster and Rose all violated due process of Law. Plaintiff has the right, under the Fifth Amendment of the United States Constitution, to life, liberty and property, and also to a fair and speedy trial (6th Amendment).

115.

Plaintiff was deprived of a fair and speedy trial, as just the first hearing alone took four months to be orchestrated.

116.

Defendants Parker, Huffman, Webster, and Rose, along with Defendants Blount, Mcgillicuddy, and Pattillo, deprived Plaintiff of her freedom to life, liberty, and property without first finding any reason for doing so, and also without ever having the right to confront witnesses.

117.

Defendant Pattillo, along with all other defendants included herein, received Plaintiff's "Demand for Criminal Complaint" well before the first court proceeding on April 6, 2017. Pattillo had ample time to review and find there was no basis for continuing the case. He had sufficient knowledge about the occurrences and power to prevent everything that happened thereafter. Instead, he ignored Plaintiff.

118.

25

In all the foregoing, Defendants Pattillo, Mcgillicuddy, Blount, Parker, Huffman, Webster, and Rose acted with complete disregard to Plaintiff's constitutionally protected rights, 5th and 6th Amendments. Violation of due process was violated. The right to a fair and speedy trial was violated. The right to confront witnesses was violated.

## THIRD CLAIM FOR RELIEF

### Excessive Fines/Cruel and Unusual Punishment

119.

Plaintiff incorporates the claims set forth in paragraphs 1-118

120.

Defendants Blount, Mcgillicuddy, and Pattillo imposed on Plaintiff excessive amounts of fines, including, but not limited to, the charges as well as monthly probationary fees, attorney's fees, and expensive, unnecessary classes (8 anger management courses and 12 moral reconation therapy classes), even after Plaintiff asked Blount if the court could dismiss the probation, and have sympathy on her, due to her not being financially able to pay these excessive fines. This is cruel and unusual punishment. (8th Amendment violation)

121.

Defendants Parker, Huffman, Webster, and Rose, all committed egregious acts upon Plaintiff by physically assaulting her over supposed "brake lights" not working. They lacked all regard for Law's 8th Amendment Protection. Breaking a window directly in Plaintiff's face and purposely causing glass to shatter in her eyes, as well as stomping her foot and slamming her

legs in the door, all while she was handcuffed and never resisting arrest, over a supposed brake light issue that was never proven, is excessive, cruel, and unusual punishment.

## FOURTH CLAIM FOR RELIEF

### Freedom of Speech Violation

122.

Plaintiff incorporates the claims set forth in paragraphs 1-121

123.

Defendant Blount repeatedly cut Plaintiff off while appropriately trying to speak for herself in court. Blount yelled at Plaintiff to "SHUT UP!" and even put her in contempt and jailed her where there was no contempt present. There were no charges of contempt ever placed on Plaintiff.

124.

Defendant Blount lacked all regard for Law's First Amendment Protection, an unalienable, God-given right.

## FIFTH CLAIM FOR RELIEF

### Involuntary Servitude/Involuntary Slavery

125.

Plaintiff incorporates the claims set forth in paragraphs 1-124

126.

Defendants Pattillo, Blount, Mcgillicuddy, Parker, Huffman, Webster, and Rose, all subjected Plaintiff to a Thirteenth Amendment infringement by charging her as a criminal where there was no crime or proof of a crime.

127.

Defendants Parker, Huffman, Webster, and Rose all treated Plaintiff as if she was a criminal and allowed for the court, Defendants Pattillo, Blount, and Mcgillicuddy, etc. to all further treat her as such, imposing mandatory jail time, work in the kitchen of the jail, payment of excessive fines, bail, community service, anger management classes, and moral reconation therapy classes. These actions created an involuntary slave out of Plaintiff.

## SIXTH CLAIM FOR RELIEF

### Punitive Damages

128.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 127, as if fully set forth herein.

129.

The acts of Defendants Parker, Huffman, Webster, Rose, Blount, Pattillo, and Mcgillicuddy, as set forth herein, were willful, malicious, violent, and so extreme and oppressive as to entitle Law to an award of punitive damages against Defendants named above.

## SEVENTH CLAIM FOR RELIEF

### Civil Damages

130.

28

Plaintiff incorporates the allegations set forth in paragraphs 1 through 129, as if fully set forth herein.

131.

The acts of Defendants Parker, Huffman, Webster, Rose, Blount, Pattillo, and Mcgillicuddy, set forth herein, were willful, malicious, violent, and so emotionally, financially, psychologically, and physically damaging as to entitle Law to an award of Civil damages, including any and all attorney's fees and/or fees of her own time and efforts to prepare all said court proceedings in her favor, against Defendants named above.

**PRAYER FOR RELIEF**

On the basis of the foregoing, Plaintiff Lauren A. Law respectfully prays this Court:

a.  Assume Jurisdiction over this matter;

b.  Award Law actual for economic losses;

c.  Award Law general damages, in amount to be determined by Law's fee schedule and other fines for authority documents Law has already submitted to the HENRY COUNTY STATE COURT and deposited through HENRY COUNTY SUPERIOR COURT'S Register of Deeds Office, or be determined through an impartial jury (trial by jury of her peers);

d.  Award Law nominal damages for violations of her Constitutional Rights;

e.  Award Law punitive damages, against Defendants Parker, Huffman, Webster, Rose, Blount, Pattillo, and Mcgillicuddy, to the extent permitted by law;

29

CERTIFICATE OF AUTHENTICITY:

I hereby Affirm, under penalty of perjury, that the aforesaid statements of fact and claims and requests presented herein are true, according to my knowledge and belief.

Respectfully submitted this 24th day of July, 2017

Lauren Angelica Law © spc