IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREN A. LAW, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| vs. | ) | |
| | ) | 1:17-CV-1953-WMR |
| B. PARKER, C. HUFFMAN, | ) | |
| T. WEBSTER, D. ROSE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This is a civil rights action filed under 42 U.S.C. § 1983. The case is before

the Court on Defendants' Motion for Summary Judgment [Doc. 68], as well as the

Plaintiff's Motion For Partial Summary Judgment, as amended. [Doc. 81]. The

motions have been fully briefed and oral argument was heard before this Court on

May 7, 2019. After due consideration of all matters of record and the arguments of

both parties, the Court hereby **GRANTS** Defendants' Motion for Summary

Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## I. BACKGROUND

This case arises out of Plaintiff Lauren Law's arrest by Henry County police

officers following a traffic stop on December 9, 2016. The Defendants in this action

include four law enforcement officers–B. Parker, C. Huffman, D. Rose, and T.

Webster, all employees of the Henry County Police Department. At the time Ms. Law filed her Complaint, she also named additional defendants who were dimissed at the frivolity stage. [Doc. 6].

Plaintiff testified that she was driving to a friend's house on December 9, 2016, when she saw blue lights behind her. Law Dep. at 83:6-12, 84:10-16. [Doc. 70]. The parties dispute whether Plaintiff's vehicle had operating brake lights when Officer Blake Parker saw Plaintiff's vehicle.[1] At this point, Plaintiff pulled over and, using her cell phone, began recording her encounter with Officer Parker. *See* cell phone video. [Doc. 69]. Officer Parker appeared at Plaintiff's car window, which Plaintiff had paritally opened, asked Plaintiff for her driver's license, and informed her that the vehicle's brake lights were not working. [Doc. 70] at 89:15-18; [Doc. 69] at 0:05 *et seq*. Plaintiff testified that Officer Parker never physically touched her during this incident. [Doc. 70] at 142:14-17.

The cell phone video reflects Plaintiff's repeated refusals to provide her name, driver's license, or to completelty roll down her window to speak with Officer Parker. [Doc. 69] at 0:05 *et seq*. After Plaintiff's repeated refusals to provide her name, license or roll down her window, Officer Parker called for backup. *Id*. at 2:00 *et seq*. Soon after Offier Parker's call, Officers Charles Huffman, David Rose and

---

[1] Due to Plaintiff's conviction for the brake light offense, the Court need not address the evidence offered about whether the brake lights worked just before the traffic stop.

Teirrah Webster arrived on the scene. [Doc. 70] at 90-92. Officers repeatedly requested that Plaintiff provide her driver's license, roll down her window, and ultimately instructed her to get out of the car. [Doc. 70] at 92:12-18; [Doc. 69] 2:00 *et seq*. After Plaintiff's repeated refusals, the officers warned Plaintiff that they would break her car window if she did not comply with their instructions. *Id.* at 3:25 *et seq*.

After Plaintiff's continued refusal, Officer Parker warned Plaintiff that they were about to break the window of her car and began striking the driver's side window of Plaintiff's car. *Id.* at 5:00 *et seq*. Officer Parker was unable to break the window and Sergeant Huffman came to his aid. After repeated strikes, Sergeant Huffman eventually broke the driver's side window.[Doc.70] at 145:2-6; [Doc. 69] at 5:13. Plaintiff claims that glass flew into her eyes and mouth when the window was broken. *Id.* at 145:6-8. The cell phone video reveals that Plaintiff had warning that officers were striking the window in an effort to break it.

After the window was broken, Officer David Rose opened the door, grabbed Plaintiff around the torso, and pulled Plaintiff out of the vehicle. *Id.* at 97:15-18, 98:11-16, 98:6-16. After being pulled from the vehicle, Plaintiff remained on her feet. *Id.* at 105:8-15. Although Plaintiff represents that Officer Rose could have been involved in handcuffing her, Plaintiff testified that this was the only time Officer Rose touched her and that she had no bruising or injuries after being pulled from the

vehicle. *Id*. at 104:16-20, 98:17-19, 104:2-4; [Doc. 69] at 5:20 *et seq*. Medical records created from an emergency room visit immediately following the incident reveal no complaint or evidence of injury to Plaintiff's torso area. *See* Piedmont Henry Records at bates 59. [Doc. 68-5].

After she was pulled from the car, Plaintiff was positioned against her car and her hands were placed behind her back, whereupon she was handcuffed by one of the officers. [Doc.70] at 108:6-8; 113:4-25. Plaintiff does not know which officer handcuffed her, but at some point, Plaintiff complained that the handcuffs were too tight. *Id*. at 137:11 When Sergeant Webster offered to loosen the handcuffs, Plaintiff refused the officer's offer. *Id*. at114:18-20-115:1-5. Plaintiff asserts that she was patted down and her property was removed from her pockets. *Id*. 141:15-22. Plaintiff was not hurt in that procedure. *Id*. at 108:12-14.

Plaintiff was then placed in the back of a police vehicle, she was seated, with her legs hanging outside of the police car. *Id*. at 115:9-24. Plaintiff was wearing jeans and leather boots. *Id*. at 109:11-14. When Sergeant Webster went to close the door of the police car, Plaintiff put up her foot, thereby preventing the door from closing. [Doc. 68-2] (Webster Declaration at Report ¶4). Although Plaintiff testified that she does not recall Sergeant Webster telling her to put her feet in the car, Sergeant Webster testified that Plaintiff refused Webster's multiple commands to put her feet in the car. [Doc. 68-2].

According to Plaintiff, Sergeant Webster then kicked Plaintiff's foot approximately 10 times[2] before Webster was stopped by Sergeant Huffman. [Doc. 70]. at 120:22-24. Sergeant Huffman then put Plaintiff's feet into the vehicle and shut the car door. *Id*. at 122:13-18. While the door was being shut, Plaintiff claims that the car door made contact with her leg when it was closed; Plaintiff's foot was not slammed in the door, and Plaintiff testified that she had no indication that Sergeant Huffman intended for the door to strike her foot. *Id*. at 123:3-14.

After her arrest, Plaintiff was transported to Piedmont Henry Hospital. *Id.* at 135:18-23. The emergency room records reflect no visible injuries, and no glass in Plaintiff's eyes or mouth. *Id.* at 133:10-25 – 134:1; [Doc. 68-5] at bates 59 ("Mouth/throat: … There is no evidence of intraoral laceration. There is no evidence of foreign body." … Eyes: … There is mild conjunctival injection likely due to pt screaming and crying. Fluorescein stain lids everted. There is NO evidence of foreign body. There is NO evidence of corneal abrasion." (emphases in original)).

---

[2] Sergeant Webster's account of this incident differs somewhat from Plaintiff's account. Webster testified that she tried to grab Plaintiff's foot with her hands, but Plaintiff attempted to kick Webster. Doc. 68-2 (Webster Declaration at Report ¶4). Sergeant Webster then used her boot in an effort to remove Plaintiff's foot, but Plaintiff still refused to move her foot. *Id*. Sergeant Webster then kicked Plaintiff's boot three times to remove it from obstructing the door, and Plaintiff still refused to move it. *Id*.

Plaintiff did not require treatment for wounds and was provided only with an over the counter pain medication. [Doc. 68-5] at bates 56, 59, 69. Hospital staff x-rayed Plaintiff's ankle, wrists and torso. [Doc. 70] at 133:14-19. The x-rays reflected no injuries. *Id.* at 133:10-19; [Doc. 68-5] at bates 66. The examining physician found no swelling, bruising or loss of function in the Plaintiff's ankle, and no evidence of a wrist injury. [Doc. 68-5] at bates 59.

Plaintiff's only visible injuries appear to be to her wrists and ankle. Plaintiff states that her right ankle was bruised on the outside. *Id.* at 65:17-25 – 66:1-9.[3] According to Plaintiff, the injury to the ankle was redness, which went away within two days, and a small bruise, which went away within two weeks. *Id.* at 63:2-25, 66:10-22. Likewise, Plaintiff's alleged wounds on her wrists healed within a couple of weeks. *Id.* at 138:14-25 – 139:1. Plaintiff asserts that she suffered emotional distress and also contends that her ovarian cyst and appendicitis, for which she required emergency surgery in March 2018, are related to the December 2016 incident underlying this case. Plaintiff has presented no expert medical evidence of a causal relationship between any of the Defendants' actions and her ovarian cyst and appendicitis.

---

[3] Plaintiff's description of the bruised area is what is medically called the "medial malleolus," which is a bony protrusion on the outside of each ankle. Law Dep. at 66:4-6.

Plaintiff was charged with a brake light violation and obstruction of Officer Parker in Henry County State Court. She pleaded guilty to obstruction of Officer Parker and pleaded *nolo contendere* to the brake light violation. *Id*. at 75 & Exhibit 3 at 2, 6. Plaintiff served her sentence and paid a fine. *Id*. at 77. While it appears that Plaintiff filed a challenge to her convictions in the State Court of Henry County, the convictions have not been overturned, nor has Plaintiff provided the Court with evidence that the convictions have been overturned. *Id*. at 77:20-25.

Plaintiff filed this action in May 2017, and the Court granted Plaintiff leave to proceed *in forma pauperis*.[Doc. 2]. Under the Court's frivolity review, pursuant to U.S.C. § 1915(a), the only claims allowed to proceed were against Defendants Parker, Huffman, Webster and Rose. The specific claims allowed to proceed are under the Fourth Amendment for the traffic stop, Plaintiff's arrest, and alleged use of excessive force at the arrest scene. [Doc. 6] at 7-12.[4] All other claims and Defendants were dismissed.

On March 22, 2018, Defendants filed their Motion for Summary Judgment. [Doc.68]. Shortly after that, Plaintiff filed her Amended Motion for Partial Summary Judgment. [Doc. 81]. The briefing process for both Motions is complete, the Parties

---

[4] The Amended Complaint does not raise any claim under state law, and the Court did not construe any state law claim in the frivolity order.

presented oral argument before this Court on May 7, 2019, and the Court finds that the matter is ripe for resolution.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of a genuine issue of material fact, looking at the evidence in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ('[A] party seeking summary judgment always bears the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of [the record] ...which it believes demonstrate the absence of a genuine issue of material fact"). After a motion for summary judgment has been properly supported, the nonmovant must present affirmative evidence "from which a jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1991) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

## III. DISCUSSION

### A. *Heck v. Humphrey* **and Plaintiff's Convictions**

Defendants contend that Plaintiff's convictions for the brake light violation and obstruction of an officer bar her Fourth Amendment illegal detention and false arrest claims. The Court agrees.

Under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994),

[I]n order to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 486-87 (1994) (emphasis in original).

Here, Plaintiff's traffic stop and false arrest claims are an implicit collateral attack on her convictions for driving without operable brake lights and obstruction of an officer. Plaintiff pleaded guilty to obstruction of Officer Parker. [Doc. 70] at Exhibit 3 at 2, 6 (conviction) and pleaded *nolo* to the brake light violation. *Id*. at 75 & Exhibit 3 at 6. Plaintiff served her sentence, paid a fine, and the convictions have not been vacated. *Id.* at 77.

A successful claim that the traffic stop was lacking in reasonable suspicion would contradict the basis for Plaintiff's brake light conviction. Likewise, if Plaintiff were to succeed on a false arrest claim in this action, it would invalidate the basis for her brake light and obstruction convictions. A lack of reasonable suspicion for the brake light violation and lack of probable cause for obstruction, which is what Plaintiff claims in this case, contradicts the essence of the Plaintiff's convictions.

Following *Heck*, federal courts have barred § 1983 claims similar to Plaintiff's, where a plaintiff was convicted under state law, and regardless whether the conviction was based on a *nolo contendere* plea. See *Quinlan v. City of Pensacola*, 449 F. App'x 867, 870 (11th Cir. 2011) (holding that conviction based on *nolo* plea barred claim under *Heck* doctrine); *Ojegba v. Murphy*, 2006 WL 1117867 (11th Cir.2006) (*Alford* plea barred § 1983 excessive force claim under *Heck* principles); *Rutledge v. Millsap,* No. 4:12-CV-0146-HLM, 2015 WL 12866455, at *10 (N.D. Ga. 2015) (holding under *Heck* that *nolo* plea barred certain § 1983 false arrest claim), aff'd, 668 F. App'x 859 (11th Cir. 2016); *Marshall v. State*, 128 Ga.App. 413(1), 197 S.E.2d 161 (1973) (a plea of *nolo contendere* stands upon the same footing as a plea of guilty for purposes of a conviction). As in those cases, Plaintiff's convictions foreclose her traffic stop and false arrest claims.

Accordingly, Defendant's Motion for Summary Judgment as to Claims 2 and 5 (traffic stop and false arrest claims) is proper, and the Court need not reach the

Defendants' qualified immunity defense as to these claims. However, the Court considers qualified immunity below in regard to Plaintiff's excessive force claim.

## B. Qualified Immunity and Excessive Force Claims

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085 (2011) (emphases supplied; quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a "discretionary function" when he performed the act of which the plaintiff complains. *Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1264 (11th Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In determining whether an official was performing a discretionary function, the 11th Circuit has established a two-part inquiry, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a

job-related goal), (b) through means that were within his power to utilize." *Id*. at 1265. Ultimately, whether the official has earned qualified immunity "is a question of law for the courts, even when asserted on summary judgment" *Post v. City of Ft. Lauderdale*, 7 F. 3d 1552, 1557 (11th Cir. 1993). When determining the question of law, the "[courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances. *Hollomn*, 370 F. 3d at 1266 (citiation omitted)(quoting *Harbert Int'l, Inc. v. James,* 157 F3d 1271, 1282 (11th Cir. 1998)). The Court finds it appropriate, based upon the alleged violations, to define the police officers' conduct as making a traffic stop, which ultimately led to the arrest of Ms. Law, as falling within the scope of their discretionaly authority.

Because it has been determined that the officers acted within their discretionary authority, the burden is now upon Plaintiff to show Defendants are not entitled to qualified immunity. See *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir.2003) (Plaintiff bears the "the burden ... to show that [Defendants are] not entitled to qualified immunity."). Once the court has determined that defendants' actions fell within their discretionary authority, the Supreme Court has established a two-part test for evaluating whether qualified immunity applies, either prong of which may be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 226 (2009). First,

the Court must determine whether under Plaintiff's version of the facts, the officers'

conduct violated a constitutional right. *Lee*, 284 F.3d at 1193–94.4 And second, the

Court must determine whether the right was clearly established. *Id.*

To meet her burden, Plaintiff must show that "existing precedent … placed

the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566

U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012). Plaintiff must show that the law was

so clearly established in December 2016, that Defendants had fair and clear warning

that what [they were] doing violates [Plaintiff's] right." *Id.* Here, Plaintiff has not

identified any binding authority that establishes a violation of her Fourth

Amendment rights.[5] Plaintiff asserts claims for excessive force in connection with

her removal from her own vehicle, tight handcuffs, and for an incident where

Sergeant Webster kicked Plaintiff's foot while Plaintiff sat in a police vehicle. A

---

[5]     In regard to qualified immunity, Plaintiff's primary authorities are the Fourth Amendment itself and *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). *Terry* is not an excessive force case, and the Fouth Amendment simply prohibits "unreasonable" seizures, without explaining to an officer the circumstances under which any given seizure is unreasonable. In rare cases an officer's alleged conduct will violate the Fourth Amendment with "obvious clarity," but that "narrow exception" to the normal requirement of clear, pre-existing case law applies "only when the conduct in question is so egregious that the government actor must be aware that he is acting illegally." *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003). Here, no Defendant's conduct qualifies for the "obvious clarity" exception. "One indication that this is not a matter of obvious clarity are the decisions … concluding that no Fourth Amendment violation occurred in circumstances very similar to those facing the [officers] in this case." *Coffin v. Brandau*, 642 F.3d 999, 1016 (11th Cir.2011).

Fourth Amendment excessive force claim is measured for "whether a reasonable

officer would believe that this level of force is necessary in the situation at hand."

*Beshers v. Harrison*, 495 F.3d 1260, 1266 (11ᵗʰ Cir.2007) (internal quotations

omitted).

> For excessive force claims, "objective reasonableness" is the test. *Zivojinovich v. Barner,* 525 F.3d 1059, 1072 (11th Cir.2008). But we have noted some secondary factors to consider: " '(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'" *Draper v. Reynolds,* 369 F.3d 1270, 1277-78 (11ᵗʰ Cir.2004) (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1198 (11ᵗʰ Cir.2002)). The nature and degree of force needed is measured by such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 109 S.Ct. at 1872; *see also* Lee*,* 284 F.3d at 1198 ("[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.").
>
> The Supreme Court teaches that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham,* 109 S.Ct. at 1872 (internal quotation marks omitted) (alteration in original). Instead, we must "slosh our way through the factbound morass of 'reasonableness.'" *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1778, 167 L.Ed.2d 686 (2007); *see also Graham,* 109 S.Ct. at 1872 ("[P]roper application [of the reasonableness test] requires careful attention to the facts and circumstances of each particular case...."). As we have said before, courts must "look[ ] to the 'totality of circumstances' to determine whether the manner of arrest was reasonable." *Draper,* 369 F.3d at 1277.

*Buckley v. Haddock*, 292 Fed.Appx. 791, 793-794 (11ᵗʰ Cir.2008).

Importantly, an officer's actions are viewed from the "'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Beshers*, 495 F.3d at 1266 (quoting *Graham v. Connor*, 490 U.S. at 396-97).

## 1.    Defendants Were Permitted to Use Reasonable Force

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Id*. at 396 (citing *Terry v. Ohio,* 392, U.S. 1, 22-27 (1968)). Here, probable cause supported Plaintiff's arrest for obstruction.[6] Furthermore, after reviewing the facts, including the cell phone video, the Court notes that Plaintiff's behavior was so patently unreasonable that some use of force was justified to take Plaintiff into custody and transport her from the scene. *Ickes v. Grassmyer*, 704 F. App'x 190, 191 (3d Cir. 2017) (affirming summary judgment for officers where driver refused to get

---

[6]    Aside from Plaintiff's convictions and the *Heck* doctrine, the Court finds that Plaintiff's refusal to provide identification and refusal to get out her car during the traffic stop support probable cause for misdemeanor obstruction of a law enforcement officer. [Doc.70]. at 92:12-18; [Doc.69] at 2:00 *et seq*. A reasonable officer could conlude that Plaintiff's conduct delayed and hindered the officers in conducting the traffic stop.  O.C.G.A. § 16-10-24 (a).

out, officers broke car window and dragged driver out, and doctor found only superficial wound on driver).

### 2. The Force Allegedly Used Was Reasonable Under the Circumstances

As noted above, certain factors provide a framework to evaluate whether use of force is reasonable. Here, there was a "need for the application of force" because Plaintiff was unidentified, uncooperative, she refused numerous officer commands, and she was subject to arrest. In response, Sergeant Huffman broke the car window and Officer Rose pulled Plainiff from the vehicle without injuring her. [Doc. 70] at 98:6-19; [Doc. 69] at 5:20 *et seq*. These actions were objectively reasonable under the circumstances. See *Merricks v. Adkisson*, 785 F.3d 553, 557 (11th Cir. 2015) (reversing district court and granting qualified immunity to officer who jerked resisting driver from car, allegedly tearing her rotator cuff); *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (finding it reasonable for officer to pull resisting driver from vehicle).

Aside from handcuffing, the only other use of force identified by Plaintiff involves the incident where Sergeant Webster kicked Plaintiff's foot. Plaintiff was seated in the backseat of a police vehicle with her legs hanging out of the open car door.[Doc.70] at 115:9-24. When Sergeant Webster went to close the door, Plaintiff put up her foot, thereby preventing the door from closing. *Id*. at 116-117:13-25.

Plaintiff was wearing jeans and leather boots. *Id.* at 109:11-14. Sergeant Webster kicked her foot as Plaintiff's leg remained outside the vehicle. [Doc. 68-2] (Webster Declaration at Report ¶4). Plaintiff claims that Sergeant Huffman then stopped Webster from kicking her foot. [Doc. 70] at 120:22-24. Then, Sergeant Huffman put Plaintiff's feet into the vehicle and shut the car door. *Id.* at 122:13-18, 123:8-14. While Plaintiff testified that her leg made contact with the car door, she also tesestified that her foot was never slammed in the door. *Id.* at 123:6-14.

This scenario involved Sergeant Webster using acceptable means to gain compliance from Plaintiff, whether Plaintiff was kicked ten times or three times. Based on Plaintiff's multiple acts of obstruction and resistance during the traffic stop, Sergeant Webster was justified in viewing Plaintiff's actions as part of the same pattern of resistance. The car door could not close without Plaintiff's feet being inside the car, and a reasonable officer could view Plaintiff as refusing to put her feet in the car. Sergeant Webster's minimal use of force was justified under circuit caselaw. See *Flowers v. City of Melbourne,* 557 Fed.Appx. 893, 895 (11th Cir.2014) ("[T]he record is clear that Flowers was vigorously resisting the officers' efforts to secure him.... We do not second-guess these decisions where the amount of force applied was not grossly disproportional to Flowers' resistance," so officers were entitled to qualified immunity); *Harvey v. City of Stuart*, 296 Fed.Appx. 824, 829– 30 (11th Cir.2008) (use of *de minimus* force was reasonable where suspect actively

resisted arrest and sustained stubbed toes, bruised knee and dislocated finger in the struggle).

### 3. The Force Allegedly Used Was *De Minimis*

In regard to Plaintiff's use of force claims, each use of force was minimal and not excessive under the circumstances. "[The Eleventh Circuit] has established the principal that the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir.2000). "*De minimis* force will only support a Fourth Amendment excessive force claim when 'an arresting officer does not have the right to make an arrest.'" *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (quoting *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006)). Here, the officers had the right to arrest Plaintiff.

The Eleventh Circuit has found "*de minimis*" uses of force where officers used a great deal more force—and inflicted a great deal more injury—than in the present case. Examples include choking, kicking, taking suspects to the ground, and various other types of maneuvers associated with physical altercations. See *Gomez v. U.S.*, 601 Fed.Appx. 841, 850 (11th Cir.2015) (finding use of force *de minimis* where officer grabbed suspect by the neck, choked him, and slammed him against the passenger side of the vehicle)*; Sullivan v. City of Pembroke Pines*, 161 Fed.Appx. 906, 910 (11th Cir.2006) (finding *de minimis* force, where officer "grabbed

detainee's arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her"); *Nolin v. Isbell*, 207 F.3d 1253, 1258, n. 4 (11th Cir.2000) (officer grabbed plaintiff, shoved him against a vehicle, pushed his knee into Plaintiff's black, searched his groin in an uncomfortable manner, and handcuffed him); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir.1997) (two officers "slammed" suspect against wall, kicked his legs apart, required him to raise his arms, and pulled his wallet from his pants); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir.1993) (officer placed plaintiff in chokehold and handcuffed him, took him outside, and pushed him against a wall when he continued speaking after being told to "shut up"); *Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994) (*de minimis* injury can serve as conclusive evidence that *de minimis* force was used).

Here, Plaintiff alleges that after the passenger side window was broken, Officer Rose pulled her from the car without injuring her. After that, she was handcuffed and placed in a vehicle. Plaintiff refused Sergeant Webster's offer to loosen the handcuffs. When Sergeant Webster wanted to close the car door, Plaintiff put up her foot and Sergeant Webster kicked Plaintiff's foot repeatedly. The kicks left no significant injury and eventually Sergeant Huffman placed Plaintiff's feet in the police vehicle. These actions fall within the bounds of acceptable, *de minimis* force under clearly established law.

### *4.* *De Minimis* **Injuries**

While recognizing that Plaintiff contends that she was injured, the record reveals that Plaintiff's alleged physical injuries fall into the category that the Eleventh Circuit deems "*de minimis*." The Eleventh Circuit has recognized a typical arrest "involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir.2002). For example, in *Hernandez v. City of Hoover*, 212 F. App'x 774, 774-75 (11th Cir.2006), an officer used a "tibia strike" on the plaintiff, resulting in a torn ligament and fractured ankle. The court held that the force was appropriate under the circumstances and necessary after the plaintiff refused verbal commands to sit down. *Id.* Even substantial injuries flowing from *de minimis* force cannot support an excessive force claim. *Rodriguez,* 280 F.3d at 1351-52 (finding *de minimis* force in handcuff maneuver, even though handcuffing resulted in extensive surgery to claimant's arm, which ultimately required amputation below the elbow).

Here, immediately following her arrest, Plaintiff went to a medical facility, where no injuries were found. *Id*. at 133:10-25 – 134:1; [Doc 68-5] at bates 56, 59, 66, 69. Plaintiff claims bruising and soreness to her wrists and ankle injuries that healed within a short time; moreover, she did not seek medical care for physical injuries at any time within close proximity to the ER visit. [Doc 70] at 63:2-25; 65:4-9, 66:10-22; 138:14-25 – 140. In short, the available, objective evidence and Plaintiff's testimony support that Plaintiff's claimed injuries were *de minimis* as a

matter of law.

For the reasons discussed above, it was not clearly established that Defendants' actions, under the totality of the facts and circumstances, violated Plaintiff's Fourth Amendment rights against excessive use of force. Accordingly, upon viewing the evidence in the light most favorable to the Plaintiff, the Court finds that qualified immunity bars Plaintiff's excessive force claims and summary judgment is appropriate as to claim 1 of Plaintiff's Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** the Defendants' Motion for Summary Judgment [Doc. 68] and **DENIES** Plaintiff's Motion for Partial Summary Judgment [Doc. 81]. Plaintiff's Amended Complaint is therefore **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the file of this case and enter a final judgment in favor of all Defendants originally sued in this case.

SO ORDERED, this 6th day of June, 2019.

_____
WILLIAM M. RAY, II
United States District Judge